## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| CATHY SOLINE BETTERTON, | ) | |
| as Special Administrator of the Estate of | ) | |
| Virgil L. Betteron, II, Deceased, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-22-238-SLP |
| | ) | |
| WORLD ACCEPTANCE CORPORATION, | ) | |
| and WORLD ACCEPTANCE | ) | |
| CORPORATION OF OKLAHOMA, INC., | ) | |
| d/b/a WORLD FINANCE CORPORATION, | ) | |
| | ) | |
| Defendants. | ) | |

### <u>O R D E R</u>

Before the Court is Plaintiff's Motion to Remand [Doc. No. 11]. The Motion is at issue. *See* Defs.' Resp. [Doc. No. 12]; Pl.'s Reply [Doc. No. 13].[1] For the reasons that follow, Plaintiff's Motion is GRANTED.[2]

### I.     <u>Factual Background</u>

In April 2021, Plaintiff commenced this action in state court and brought a single claim for relief against Defendants, arising under state law, for intentional infliction of

---

[1] Citations to the parties' briefing submissions reference the Court's ECF pagination.

[2] After commencement of this litigation, Plaintiff, Virgil L. Betterton, II, died and his wife, Cathy Soline Betterton, was substituted as the Special Administrator of the Estate of Virgil L. Betterton, II. *See* Order [Doc. No. 10]. Because the pending Motion involves discovery directed to Virgil Betterton, including his deposition testimony, for ease of reference and clarity and consistent with the parties' briefing submissions, the Court refers to Virgil L. Betterton, II as "Plaintiff."

emotional distress (IIED). *See* Compl. [Doc. No. 1-1].[3]  Approximately eleven months later, Defendants removed the action to federal court.  *See* Notice of Removal [Doc. No. 1].  According to Defendants, Plaintiff "alleges rights that relate to an employee welfare benefit plan, specifically a medical benefit plan, subject to the provisions of the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. § 1001, *et seq.*"  *Id.* at 5, ¶ 7.  Defendants, therefore, removed the action on the basis of federal question jurisdiction under 28 U.S.C. § 1331, under the premise that ERISA completely preempts Plaintiff's state law IIED claim.

As discussed more fully infra, nearly ten months prior to removing this action, Defendants filed a motion to dismiss in state court, raising the issue of ERISA complete preemption.  *See* Mot. [Doc. No. 1-6].  The state court denied the motion to dismiss, finding Plaintiff's IIED claim was not preempted.   *See* Journal Entry [Doc. No. 1-13].

Plaintiff moves to remand the action to state court.  First, Plaintiff argues that remand is proper because the notice of removal was untimely filed.  Second, Plaintiff argues his state-law claim for IIED is not completely preempted by ERISA and that Defendants cannot establish subject matter jurisdiction in this Court.

In response, Defendants contend that the notice of removal is timely because it was filed within thirty days of receipt of Plaintiff's responses to requests for admissions, Plaintiff's deposition testimony and statements made by Plaintiff's counsel in the context

---

[3] Although the state court pleading is entitled "Petition," because the case has been removed, the Court refers to the Petition as the Complaint, consistent with federal nomenclature.

of a hearing on a motion to settle journal entry as to the state-court ruling on Defendants'
motion to dismiss.  Defendants argue that these "other papers" now demonstrate that
Plaintiff's IIED claim is subject to complete preemption under ERISA and, therefore, that
this Court has federal subject matter jurisdiction.[4]

## II.  Governing Law

Removal of an action from state court to federal court is proper when the federal
district court has "original jurisdiction" over the action.  28 U.S.C. § 1441(a).  The notice
of removal must be filed "within 30 days after the receipt by the defendant, through service
or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which
such action or proceeding is based."  28 U.S.C.A. § 1446(b)(1). However, "if the case
stated by the initial pleading is not removable, a notice of removal may be filed within 30
days after receipt by the defendant, through service or otherwise, of a copy of an amended
pleading, motion, order or other paper from which it may first be ascertained that the case
is one which is or has become removable." 28 U.S.C § 1446(b)(3).  The other paper must

---

[4] Defendants filed their Notice of Removal on March 23, 2022.  The deposition of Virgil Betterton
was taken on March 14, 2022 and the discovery responses relied upon by Defendants are dated
March 22, 2022. The hearing on the motion to settle journal entry occurred on March 15, 2022.
Thus, Defendants' Notice of Removal was filed within thirty days of the "other papers" upon
which they rely.  Plaintiff does not challenge the timeliness of removal on this ground.  Instead,
Plaintiff argues Defendants raised the issue of ERISA complete preemption in their state-court
motion to dismiss and, therefore, had notice of their right to removal at that time.  As discussed
herein, to the extent the allegations of the Complaint standing alone, form the basis of removal,
the Court finds the notice of removal is untimely.  Otherwise, to the extent Defendants have relied
on the other papers, the Court finds Defendants have not established a basis for federal subject
matter jurisdiction on grounds of complete preemption under ERISA.  For these reasons, the Court
need not address Plaintiff's additional arguments concerning "waiver" or "law of the case."  *See*
Pl.'s Mot. at 25-26.

provide a "clear and unequivocal notice" of the right to remove and "should not be ambiguous." *Akin v. Ashland Chem. Co*., 156 F.3d 1030, 1035-36 (10th Cir. 1998).

In cases where removal is based on federal question jurisdiction, removability is governed by the "well-pleaded complaint rule." Under this rule, "federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987). "The rule makes the plaintiff the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law." *Id*.

However, "an 'independent corollary' to the well-pleaded complaint rule" is the 'complete preemption' doctrine." *Id*. at 393. Where "an area of state law has been completely pre-empted, any claim purportedly based on that preempted state law is considered, from its inception, a federal claim, and therefore arises under federal law." *Id*.; *see also Bd. of Cnty. Commr's of Boulder Cnty. v. Suncor Energy (U.S.A.), Inc*., 25 F.4th 1238, 1256 (10th Cir. 2022) (recognizing that "complete preemption" also known as "artful pleading" permits a court to uphold removal "even though no federal question appears on the face of the plaintiff's complaint" (internal quotation marks and citation omitted)). Complete preemption of a state law claim by ERISA has long been recognized as a ground for removal to federal court. *See, e.g., Aetna Health Inc. v. Davila*, 542 U.S. 200, 209 (2004); *see also Felix v. Lucent Techs., Inc*., 387 F.3d 1146, 1156 (10th Cir. 2004) ("[T]he preemptive force of § 502(a) of ERISA is so 'extraordinary' that it converts a state law claim into a federal claim for purposes of removal and the well-pleaded complaint rule.").

4

III.   <u>**Discussion**</u>

A.   **Factual Allegations of Plaintiff's Complaint**

Plaintiff's claim for IIED is premised on Defendants' intentional firing of him "because he was diagnosed with cancer." *See* Compl., ¶ 17. Plaintiff's claim is further premised on Defendants' intentional violation of their own policies and procedures in terminating Plaintiff. *Id*., ¶ 18.[5]

In support of his IIED claim, Plaintiff alleges that he was diagnosed with cancer, informed Defendants of his diagnosis and went on medical leave. *Id.*, Factual Background, ¶¶ 4-5. Approximately four months later, effective March 18, 2021, Defendants fired Plaintiff. *Id*., ¶ 6. Plaintiff alleges the termination of his employment was physically and emotionally devastating, causing him to sustain severe emotional distress and worry. *Id*., ¶¶ 7-9. He further alleges that Defendants "lied to Plaintiff and coerced him to find other health insurance by the end of March 2021, stating he was not eligible for COBRA benefits or any other continued health coverage through Defendants." *Id*., ¶ 10. As a result of Defendants' "misrepresentation and deception" Plaintiff enrolled on his wife's health insurance plan but then discovered her plan would not cover costs of out-of-state cancer treatment that Plaintiff had been initially approved for under "the health insurance he had

---

[5] The Complaint does not provide further factual allegations to identify what policies and procedures were violated. But Defendants do not point to the alleged violation of any such policies and procedures as the basis for removal. At the referenced hearing before the state court, Defendants' counsel agreed that the allegations in Count I "seem to be squarely within common law intentional infliction of emotional distress." *See* Tr. (3/15/2022 hearing) [Doc. No. 12-1] at 6:9-24.

through Defendants." *Id.*, ¶ 11-14.  Plaintiff's cancer treatment was unnecessarily delayed as a result of Defendants' misrepresentations.  *Id.*, ¶ 15.

Plaintiff disavows alleging any claim for relief other than his IIED claim stating as follows:

> In the event any Defendant seeks to remove this case and/or claims that federal claim or question is raised by this [Complaint] or any other paper, Plaintiff expressly disavows any such federal claim or question as being part of this lawsuit.  Plaintiff's claim is based on the common law tort of intentional infliction of emotional distress under Oklahoma [s]tate law. Plaintiff seeks no recovery or damages under any other theory or claim.

*Id.*, ¶ 25.

### B.      Defendants' Motion to Dismiss Filed in State Court

As set forth, Defendants moved to dismiss the Complaint in state court on grounds of complete preemption under ERISA.  Defendants argued that Plaintiff's IIED claims "arising out of the administration of an ERISA plan are preempted by ERISA" as well as those "relating to COBRA notice and coverage."  Defs.' Mot. to Dismiss [Doc. No. 1-6] at 9-10; *see also id*. at 10 (further arguing that "Plaintiff's allegations clearly relate to the administration of an employee benefit plan" and "to the extent that Plaintiff's claim is based on an alleged statement that Plaintiff 'was not eligible for COBRA benefits or any other continued health coverage' or is based on any denial of health-insurance benefits, Plaintiff's claim is preempted by ERISA).  *Id*. at 10.

In response, Plaintiff reiterated that he was not bringing any claim for relief under federal law.  *See* Pl.'s Resp. [Doc. No. 1-8] at 10.  He further argued the following with respect to the Complaint's coercion allegations:

Plaintiff's reference to Defendants' coercion is not based upon any denial of health-insurance benefits or termination of health coverage. It does not relate to the administration of an employee benefit plan. Plaintiff's allegation of Defendants' coercion is simply related to Defendants' intentional acts to cause Plaintiff severe emotional distress.

*Id.*

Plaintiff also relied on *Smith v. N. Okla. Cnty. Mental Health Care Ctr., Inc*., No. CIV-07-1425-R, 2008 WL 11337875 (W.D. Okla. Sept. 23, 2008). Plaintiff argued that in *Smith*, the court "clearly made a distinction between a claim predicated on the exercise of ERISA rights (which would be preempted) versus one where the employer terminated an employee due to having cancer and receiving cancer treatments, and then terminated said employee's benefits." Pl.'s Resp. [Doc. No. 1-8] at 11-12. Plaintiff additionally argued that his IIED claim "has nothing to do with his employer's health insurance coverage because there was no health plan in effect." According to Plaintiff, "[t]here was no plan to administer and no plan to terminate" and thus, "[t]here were no ERISA rights exercised by Plaintiff." *Id*. at 12.

In reply, Defendants deemed Plaintiff's coercion argument "nonsensical" as "'denial of COBRA benefits or any other continued health coverage' is exactly what Plaintiff alleges.' *See* Defs.' Reply at 5 (quoting Compl., ¶ 10). Defendants reiterated that "to the extent" Plaintiff's IIED claim is "based on an alleged statement that Plaintiff was not eligible for COBRA benefits or any other continued health coverage or based on any denial of health-insurance benefits" the claim is preempted by ERISA. *Id*. at 6.

As stated, the state court entered a Journal Entry and denied Defendants' motion.

The Journal Entry finds:

> The facts, as pleaded by Plaintiff, are sufficient to support a claim for intentional infliction of emotional distress, and Oklahoma law recognizes that intentional infliction of emotional distress is a viable claim in an employment setting.   Furthermore, Plaintiff's intentional-infliction-of-emotional-distress claim is not preempted by either the Oklahoma Anti-Discrimination Act or the Employee Retirement Income Security Act of 1974.

*See* Journal Entry Regarding Defs.' Mot. to Dismiss [Doc. No. 1-13].

### C.     The "Other Papers"

In removing this action pursuant to § 1446(b)(3), Defendants argue that Plaintiff's discovery responses, deposition testimony, and representations of Plaintiff's counsel at the state-court hearing constitute "other papers" that now establish a right to removal based on complete preemption under ERISA.  The Court sets forth the content of each of the "other papers" at issue.

### 1.     Responses to Requests for Admissions

Defendants rely, in part, on Plaintiff's responses to requests for admissions.  In two of the requests, Defendants asked Plaintiff to admit that he had not brought a claim under ERISA.  In the remaining requests, Defendants asked Plaintiff to admit that his IIED claim was not predicated on: (1) Defendants' attempt to avoid payment of Plaintiff's cancer treatments under Defendant's health benefit plan; (2) Defendants' retaliation for Plaintiff's exercise of rights under Defendant's health benefit plan; or (3) Defendants' alleged interference with Plaintiff's right to participate in and receive benefits from Defendants'

health plan.  *See* Defs.' Resp. at 13-14 (citing Requests for Admission Nos. 7-8 and 13-15).

Plaintiff objected to each request on grounds the request "was not a proper request for admission," called for a legal conclusion and sought the mental impressions of counsel. *See id*.  In further response, Plaintiff stated "[w]ithout waiving the objection, ***see Plaintiff's [Complaint]***."  *Id*. (emphasis added).[6]

### 2.    Plaintiff's Deposition Testimony

Defendants also point to deposition testimony of Plaintiff.  This testimony arose in the context of questions directed to how the premiums for his health insurance were paid, but the testimony is not responsive to any of those questions.  Plaintiff testified as follows:

> A.    . . . I'm 58 years old, and it's hard to talk to people that you barely know in front of that I loved that company.  I loved it.  I don't know if you've ever worked for a company that you absolutely loved to death, loved the people you worked for.  I would have never thought them son of bucks would turn around and fire me ***and leave me without insurance***, knowing what all I've done for them for 26 and a half years.
>
> And Rodney Owens, I've saved having his butt whopped two or three times going and firing people, because that's what they was going to do to him, and then he turns around and fires me when he can't save me a little bit?

---

[6]  As previously set forth, the Complaint expressly disavows any federal claim.  *See* Compl., ¶ 25.

Man, I don't like that dude.  And if you treated me the same way I wouldn't like you, and you'd know that.

> Q.    Let me ask –

> A.    It's just pretty damn sorry what they did to me.  I mean, I did – when they said, 'Jump, get over the fence and go see that customer because they ain't paid you' – that's the kind of work I started out doing there.  Man, I'd go out and collect $500, $700, $800 at a time.  I mean, I was one of the best they had and was told that by many people throughout my career there.

> I think some of it was – ya'll see me today at 245 pounds.  I used to be a big bastard and mean; not to my kids or family, though, but to someone who treated me like Rodney.  That I didn't go ger him was a miracle for me.

> Q.    Okay. Let me ask you –

> A.    But what I want to know is if you men are ever in my shoes like that and you loved the company you worked for that hard – that's a job I was supposed to have in my life, I was the best at it.

> Q.    Is it your –

> A.    And then to fire me ***and leave me without insurance*** and right in the middle of everything that was going on, did it hurt me:  Yeah, it crushed me. Yeah.

Pl.'s Dep. [Doc. No. 1-32] at 91:17-93:6 (emphasis added).

Defendants argue Plaintiff's deposition testimony – that Defendants fired him and left him without insurance – establishes that his state law claim for IIED is completely preempted by ERISA.

### 3.    Argument by Plaintiff's Counsel at Hearing

Finally, Defendants point to argument of Plaintiff's counsel made during the course of the state-court hearing.[7]   At the hearing, the parties again disputed the proper construction of Plaintiff's IIED claim in the context of Defendants' filing of a Motion for More Definitive Ruling Concerning August Journal Entry Regarding Defendants' Motion to Dismiss.  *See* Defs." Mot. [Doc. No. 1-24].  Defendants asked the Court to include language, which they argued was consistent with the *Smith* opinion, in the Journal Entry. Specifically, Defendants asked the Court to include the following language:

> If Plaintiff's claim for intentional infliction of emotional distress had been predicated upon Defendants' alleged termination of Plaintiff's employment for the purpose of avoiding payment of Plaintiff's cancer treatments under Defendants' self-funded health benefit plan, in retaliation for the exercise of his rights to participate in and receive benefits from that plan, or to interfere with the exercise of his rights to participate in and receive benefits from that plan, Plaintiff's claim would be preempted by [ERISA].  However, because Plaintiff has 'disavow[ed] any . . . federal claim or question as being part of this lawsuit' and has limited the predicate for his claim for intentional infliction of emotional distress to Defendants' termination of Plaintiff's employment while he was receiving cancer treatment, Plaintiff's claim is not preempted by ERISA.

---

[7] Plaintiff does not contest that the argument of counsel at the hearing qualifies as an "other paper" for purposes of § 1446(b)(3).  Because Plaintiff does not contest the matter, the Court treats such argument as an other paper.  *See* 14C Wright & Miller, Fed. Prac. & Proc., § 3731 (4th ed. 2018) ("Courts ordinarily hold that oral statements do not trigger removability. . . .  A limited exception to this principle is that a renewed period of removability can be triggered by oral statements made in the courtroom during the course of the action"); *see also Estate of Davis v. DeKalb Cnty.*, 952 F. Supp. 2d 1369, 1373 (N.D. Ga. 2013) (determining that removal was untimely based on when the defendants became aware of 42 U.S.C. § 1983 claims during oral arguments before the state court).

*See* Defs.' Mot. at 11.

Plaintiff opposed this Motion.   In sum, Plaintiff argued that the Motion was "unnecessary, speculative, and a waste of the Court's time and resources as the Journal Entry fully and accurately reflects its ruling on Defendants' Motion to Dismiss.  *See* Pl.'s Resp. [Doc. No. 1-26] at 4.  Defendants filed a Reply [Doc. No. 1-28] and again urged the Court to include its suggested language in the Journal Entry, arguing, inter alia, that Plaintiff was "playing a cat-and-mouse game" and that the court could not take at face value Plaintiff's representation that the IIED claim has nothing to do with health insurance. *Id*. at 5.

The state court held a hearing on this matter.   *See* Tr. (3/15, 2022 hearing) [Doc. No. 12-1].  Addressing the coercion allegations, Plaintiff's counsel stated to the court that Defendants told Plaintiff that he needed to get on his wife's insurance plan as soon as possible.  Tr. at 14:17-21.  The court then asked for clarification as to whether Plaintiff's IIED claim "centered" around an allegation that Defendants "terminated [Plaintiff] for the purpose of avoiding payment of his cancer treatments."  Plaintiff's counsel answered "No." *Id*. at  15:16-22.  The court then asked: "[s]o there's not an allegation that it was – they just didn't want to incur this expense for the cancer treatments?"  *Id*. at 16:2-4.  Plaintiff's counsel assured the Court that that there was no such allegation.  *Id*. at 16:5-6.  Plaintiff's counsel then added: "We didn't allege that.  We alleged they coerced him *for whatever reason* to get on his wife's health insurance."  *Id*. at 16:8-10 (emphasis added).

Defendants' counsel responded arguing that "interference and coercion are the same thing."  According to Defendants' counsel, Plaintiff's argument was that "[Defendants] coerced [Plaintiff] into getting off the plan versus [Defendants] interfered with his right to get on the plan."  *Id*. at 20:11-14.  Defendants' counsel further argued: "we still don't know to this day whether we're talking about coercion as being – off the health insurance plan as being a foundation or a predicate for the claim or not."  *Id*. at 20:19-22.

The state court declined to "revisit the denial of the Motion to Dismiss."  *Id*. at 22:10-15.  Defendants' counsel then pressed further and asked: "does the [c]ourt understand that Plaintiff's – part of Plaintiff's claim is that Mr. Betterton was coerced off his insurance?  Is that part of the intentional infliction of emotional distress claim, as far as the [c]ourt is concerned?  *Id*. at 24:25-25:5.  The court then stated to Plaintiff's counsel: "I think I heard you say that today, that coercion makes up a portion of your intentional infliction of emotional distress claim.  Is that what you said?  *Id*. at 25:8-12.  Plaintiff's counsel responded: "It's in the Petition that they coerced him, yes."  *Id*. at 25:13-16.  Ultimately, the state court denied Defendants' Motion.

Based on these other papers, the Court must determine whether Plaintiff's IIED claim is completely preempted by ERISA.  Thus, the Court turns to that analysis.

### D.   Complete Preemption

ERISA entails two different types of preemption: conflict preemption under ERISA § 514, codified at 29 U.S.C. § 1144; and complete preemption under ERISA § 502(a), codified at 29 U.S.C. § 1132.  *Felix*, 387 F.3d at 1153.  "Although courts and parties often confuse § 514 preemption with § 502(a) complete preemption, the Supreme Court has held

that the two are distinct concepts, with only the latter supporting removal." *Id*. at 1156.

Thus, unlike § 502(a), which is jurisdictional and creates a basis for removal to federal

court, preemption under § 514 displaces state law for federal law but does not confer federal

jurisdiction.[8]

The dispositive issue before the Court, therefore, is whether Plaintiff's IIED claim

can be characterized as a claim under § 502(a).[9]  That section provides:

A civil action may be brought –

(1) by a participant or beneficiary –

. . .

> (B) to recover benefits due him under the terms of his plan, to enforce
> his rights under the terms of the plan, or to clarify his rights to future
> benefits under the terms of the plan . . . .

---

[8] The Court notes that Plaintiff's reliance on *Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co*., 170 F.3d 985 (10th Cir. 1999) and *Richardson v. Watco Cos., Inc*., No. CIV-10-0047-HE, 2010 WL 4394229 (W.D. Okla. Sept. 23, 2010) is misplaced.  *See* Pl.'s Mot. at 27-28.  In each of those cases, the court addressed conflict preemption under § 514 of ERISA, 29 U.S.C. § 1144(a). Any issue of conflict preemption is not before the Court.  Because the Court finds remand is proper, the issue remains for determination by the state court, should the parties raise it. *See Felix*, 387 F.3d at 1156 (ERISA preemption under § 514 is merely a federal defense that cannot provide the basis for removal jurisdiction; on remand, state court free to consider dismissal under § 514's conflict preemption provision); *see also Dukes v. U.S. Healthcare, Inc*., 57 F.3d 350, 353 (3d Cir. 1995) ("When the doctrine of complete preemption does not apply, but the plaintiff's state claim is arguably preempted under § 514(a), the district court, being without removal jurisdiction, cannot resolve the dispute regarding preemption. It lacks power to do anything other than remand to the state court where the preemption issue can be addressed and resolved.").

[9] Even if Plaintiff improperly moves to remand on the basis of conflict preemption, instead of complete preemption, the Court has an independent obligation to determinate whether jurisdiction exists and may address the issue sua sponte.  *See Image Software, Inc. v. Reynolds & Reynolds Co.*, 459 F.3d 1044, 1048 (10th Cir. 2006).  Moreover, in response to Plaintiff's Motion, Defendants have appropriately directed their argument to the issue of complete preemption.  *See* Defs.' Resp. at 18-21.

29 U.S.C. § 1132(a).

The Supreme Court has established a two-part test for determining when ERISA completely preempts a state-law claim. *Davila*, 542 U.S. at 210. Both steps must be satisfied in order to find complete preemption. *Id.*

First, the court must ask whether the plaintiff "could have brought his claim under ERISA § 502(a)(1)(B)." *Id.* The answer to that question is determined by identifying what the plaintiff is truly "complain[ing] . . . about." *Id.* at 211. "A claim meets the first prong of the *Davila* test if it asserts rights to which the plaintiff is entitled 'only because of the terms of an ERISA-regulated employee benefit plan.'" *Salzer v. SSM Health Care of Okla. Inc.*, 762 F.3d 1130, 1135 (10th Cir. 2014) (quoting *Davila*, 542 U.S. at 210).

Second, the court must ask whether the plaintiff's suit implicates a "legal duty . . . independent of ERISA or the plan terms." *Davila*, 542 U.S. at 210. That question is answered by reviewing the plaintiff's allegations alongside the state law on which they are based. *See id.* at 211-13. If "interpretation of the terms of [a] benefit plan[ ] forms an essential part" of the plaintiff's claim, *Davila's* second requirement is satisfied. *Id.* at 213; *see also Salzer*, 762 F.3d at 1138 ("interpretation of the Plan is a necessary component of the claim and thus the legal duty at issue cannot be described as independent of ERISA"); *David P. Coldesina, D.D.S. v. Estate of Simper*, 407 F.3d 1126, 1137 (10th Cir. 2005) ("[A] claim only falls within ERISA's civil enforcement scheme when it is based on legal duties created by ERISA or the plan terms, rather than some other independent source.").

As to the first *Davila* prong, Plaintiff's IIED claim is centered on his alleged wrongful termination because he had cancer. Such a claim is not preempted. *See, e.g.,*

*Clark v. Coats & Clark, Inc*., 865 F.2d 1237 (11th Cir. 1989) (claim for IIED was not preempted where it was connected to termination from employment, as opposed to a termination of ERISA benefits); *see also Felix*, 387 F.3d 1146, 1159 (finding plaintiffs' claim that "they were fraudulently induced to take early retirement, to their financial detriment" and request for "monetary damages from their employer (not from the pension plan) for that alleged fraud" was a claim that fell outside the scope of § 1132(a)(1)").

Indeed, in *Smith*, discussed supra, and relied upon by both parties before the state court, a distinction was made between a claim for IIED "predicated upon Defendant's alleged termination of Plaintiff's employment for the purpose of avoiding payment of Plaintiff's cancer treatments under Defendant's self-funded health benefit plan" and a claim for IIED "predicated on Defendant's termination of Plaintiff's employment while she was receiving cancer treatment, eliminating Plaintiff's source of income and terminating her disability insurance." *Smith*, 2008 WL 11337875 at *6-7. The court found the former claim to be preempted by ERISA but the latter claim not to be preempted. *Id*.

As to the second *Davila* prong, Plaintiff's IIED claim does not involve any interpretation of any terms of an ERISA plan. Instead, "any connection to the plan is fortuitous." *David P. Coldesina*, 407 F.3d at 1137. Plaintiff could bring his IIED claim even if no ERISA plan were at play. Plaintiff's claim arises under tort law, based on a duty independent of any duty derived from a plan.[10]

---

[10] As Defendants note, Plaintiff's IIED claim is not based on any interference with COBRA rights. *See* Defs.' Resp. at 21, n. 3; *see also* Pl.'s Reply at 6 ("[Plaintiff] never enrolled in COBRA coverage, Plaintiff has not alleged any ERISA violations, and the administration of an ERISA plan is not at issue.").

Having fully and carefully considered the issue, the Court finds, on the record presented, that Plaintiff's IIED claim is not completely preempted by ERISA.  The Court acknowledges Defendants' apparent frustration in not being able to definitively ascertain the import of Plaintiff's coercion allegations and deposition testimony.   To this end, Defendants contend that § 510 of ERISA, codified at 29 U.S.C. § 1140, is implicated. Section 1140 makes it unlawful "to discharge . . . a participant or beneficiary for exercising any right to which he is entitled under the provides of an employee benefit plan . . . or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan . . . ."  29 U.S.C. § 1140.[11]

Plaintiff does not, however, allege that Defendants terminated his employment for the purpose of interfering with or preventing his attainment of benefits.  *See, e.g., Branham v. Delta Airlines*, 184 F. Supp. 3d 1299, 1309 (D. Utah 2016) (claim for interference with benefits under ERISA is not actionable "where the alleged loss of rights is a mere consequence, as opposed to a motivating factor behind the termination"), *aff'd*, 678 F. App'x 702 (10th Cir. 2017).  For this reason, Defendants' reliance on *Wood v. Prudential Ins. Co. of Am.*, 207 F.3d 674, 677 (3d Cir. 2000) is misplaced.  In *Wood*, the Third Circuit found complete preemption where the complaint contained allegations that an employee was fired solely so that the employer could "*avoid paying health and retirement benefits.*"

---

[11] Section 510 of ERISA, 29 U.S.C. § 1140, provides that a claim for such a violation can be brought under ERISA § 502(a).  *See* 29 U.S.C. § 1132(a).

*Id*. at 677 (emphasis added).[12]   For this same reason, the other cases cited by Defendants are inapposite. *See, e.g., Palagyi v. Canada Nat'l*, No. 1:13-CV-01734, 2013 WL 5519654 at \*2 (N.D. Ohio Oct. 2, 2013) (finding complete ERISA preemption where plaintiff alleges employer "recalled him from furlough, enrolled him in a new healthcare plan, and then within 48 hours removed him from service *with the purpose and intent to deprive him of coverage provided under his old ERISA plan*" (emphasis added)).   Unlike these cases, Plaintiff does not allege he was terminated for the purpose of depriving Plaintiff of any benefits under an ERISA plan.

Ultimately, Defendants bear the burden of proving the other papers, together with the allegations of the Complaint, establish the existence of federal subject matter jurisdiction.   Defendants have failed to do so.

In the Court's view, Plaintiff's responses to the requests for admissions do not provide a basis for removal.   Those responses refer directly back to the Complaint which expressly disavows any federal claim.[13]

---

[12] In *Wood*, the court rejected the plaintiff's argument that he alleged claims of age and disability discrimination "entirely separate from" his "benefits-defeating allegation."   The court found that the complaint alleged no facts to support a claim that the plaintiff's age had any bearing on the decision to terminate him.   Instead, the plaintiff's reference to age was to establish he was "about to become eligible for full retirement benefits."   *Id*. at 677.   Thus, the court concluded: "we find nothing in [the plaintiff's] complaint other than an allegation that [the defendant] terminated Wood's employment to avoid paying health and retirement benefits."   *Id*.   By contrast, here Plaintiff's Complaint directly alleges his cancer as the basis for termination and contains no express benefits-defeating allegation.

[13] And, if Defendants were to rely on the allegations of the Complaint, the notice of removal is untimely.   As discussed, several months before filing their Notice of Removal, Defendants raised the issue of ERISA complete preemption in state court, relying on the allegations of the Complaint.

Plaintiff's scant deposition testimony, that he was "left without insurance" speaks to a consequence of his termination rather than a principal part of Plaintiff's claim. Therefore, such testimony does not provide a basis for removal on grounds of ERISA preemption. *See, e.g., Potter v. Metro. Life Ins. Co*., No. 3:11-0363, 2011 WL 6009977 at *2 (S.D.W.Va. Dec. 1, 2011) (contrasting *Wood* and concluding "Plaintiff's allegations indicate that loss of retirement benefits may be one consequence of termination, but do not claim that such deprivation was a principal motivation for his termination."); *Evans v. S. Cal. Gas Co*., No. CV-09-01630 DDP, 2009 WL 2524752 at *4 (C.D. Cal. July 20, 2009) (plaintiff's claims arising out of her termination following expiration of long-term disability benefits were not completely preempted by ERISA where plaintiff's claim was not stated "in such a way that makes clear she seeks to enforce the terms of the plan or recover benefits under the plan" but rather "her claim for benefits [was] framed as part of her compensatory damages"); *Herring v. Oxy Vinyls L.P.*, No. CIV.A. H-05-0719, 2005 WL 1653076 at *6 (S.D. Tex. July 8, 2005) (collecting cases finding state law claims were not preempted by ERISA where the "heart" of the state-law claim was wrongful termination or discrimination and claim would not cease to exist if stripped of any link to an ERISA plan); *cf., Daleidan v. Dupage Internal Med., Ltd*., No. 02 C 2785, 2002 WL 1858790 at *2 (N.D. Ill., Aug. 13, 2002) (IIED claim preempted where the plaintiff alleged the defendant fired her while she was in the hospital in order to avoid liability for failing to provide insurance and in retaliation for filing an insurance claim).

Finally, the record as to Plaintiff's coercion allegations remains too unclear to establish complete preemption.   The parties engaged in a thorough colloquy with the state

court as to this issue in ruling on Defendants' motion for a more definitive statement.  But the state court declined to "shake answers out of people," instead limiting its ruling to the representation of Plaintiff's counsel that, as alleged in the Complaint, "coercion makes up a portion of [the] intentional infliction of emotional distress claim."  *See* Tr. at 25:6-23.[14]

In sum, as a court of limited jurisdiction, the Court must "presume no jurisdiction exists absent an adequate showing by the party involving federal jurisdiction." *Dutcher v. Matheson*, 733 F.3d 980, 985 (10th Cir. 2013).  Here, it is simply not clear from the "other papers" upon which Defendants rely that Plaintiff is asserting a claim that is subject to complete preemption under ERISA.  As a result, Defendants have failed to meet their burden of showing federal subject matter jurisdiction exists and removal, therefore, is improper.

### E.    Award of Fees and Costs

Plaintiff asks for an award of fees and costs pursuant to 28 U.S.C. § 1447(c). The Court declines to grant Plaintiff's request.  The record shows both parties have engaged in some degree of litigation strategy and tactics.  And, although the Court ultimately disagrees with Defendants' arguments, the Court does not conclude that the basis for Defendants' removal was unreasonable.  *See Porter Tr. v. Rural Water Sewer & Solid Waste Mgmt. Dist. No. 1*, 607 F.3d 1251, 1253 (10th Cir. 2010) ("[T]he standard for awarding fees should turn on the reasonableness of the removal." (citation and internal quotation marks omitted)).

---

[14] The Court reiterates that, to the extent Defendants' removal is based on the allegations of the Complaint, the notice of removal is untimely.

**IV.**    **Conclusion**

IT IS THEREFORE ORDERED that Plaintiff's Motion to Remand [Doc. No. 11]

is GRANTED.  This matter is remanded to state court.

The Clerk of Court is directed to take all actions necessary to effect the remand.

IT IS SO ORDERED this 12th day of April, 2023.


**SCOTT L. PALK**
**UNITED STATES DISTRICT JUDGE**

21